**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WINDSTREAM HOLDINGS, INC., et al.,[1] | ) | Case No. 19-22312 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| WINDSTREAM HOLDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. No. 19-08246 |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARTER COMMUNICATIONS, INC. and CHARTER COMMUNICATIONS OPERATING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY INJUNCTION AGAINST CHARTER COMMUNICATIONS, INC.
AND CHARTER COMMUNICATIONS OPERATING, LLC**

This matter is before the Court on the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") for the issuance and entry of a preliminary injunction order pursuant to Section 105(a) of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), 15 U.S.C. § 1125(a), Rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9077-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "Local Rules"), and

---

[1] The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717. Due to the large number of debtor entities in these Chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream. The location of the Debtors' service address for purposes of these chapter 11 cases is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this Court's Final Order Establishing Certain Notice, Case Management and Administrative Procedures [Main Case Docket No. 392] (the "Case Management Order").  This Court having already entered a Temporary Restraining Order against Charter Communications, Inc. and Charter Communications, LLC (collectively, "Charter") on April 16, 2019 [Adv. Docket No. 25] (the "TRO"); and upon the record of the evidentiary hearings held by the Court on the Motion on April 15, 2019 and May 14, 2019; and, after due deliberation and for the reasons stated by the Court in its bench ruling at the hearing on May 14, 2019, good and sufficient cause appearing,

**IT IS HEREBY FOUND AND DETERMINED THAT**

A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated February 1, 2012, and this Court may enter a final order thereon consistent with Article III of the United States Constitution;

B.    Venue for the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

C.    This is a core proceeding pursuant to 28 U.S.C. § 157(b);

D.    The legal and factual bases set forth in the Motion and at the evidentiary hearings on April 15, 2019 and May 14, 2019, establish good and sufficient cause exists for granting the relief provided herein because the Debtors have demonstrated that: there exists a substantial likelihood of success on the merits of their claim against Charter for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the Debtors and their estates and creditors will suffer irreparable harm if a preliminary injunction is not issued; the serious and irreparable harm to the Debtors from failure to issue a preliminary injunction far outweighs any harm to Charter; and issuance of a preliminary injunction is in the public interest by preventing harm to

the Debtors' reorganization efforts and their estates and precluding additional harm under the Lanham Act;

E. The legal and factual bases set forth in the Motion and at the evidentiary hearings on April 15, 2019 and May 14, 2019 establish good and sufficient cause for granting the relief sought by the Debtors concerning corrective advertising because the Debtors have demonstrated that prohibiting further dissemination of the false advertisements and the Debtors' own prior corrective efforts are not enough to ameliorate the confusion that the advertisements caused in the minds of the consumers; and that corrective advertisements must be disseminated now to counteract the false impression that the advertisements necessarily created in the minds of consumers; and

F. The legal and factual bases set forth in the Motion and at the evidentiary hearings on April 15, 2019 and May 14, 2019, establish good and sufficient cause for granting the relief sought related to the Debtors' claim that Charter violated the automatic stay under Section 362(a) of the Bankruptcy Code because the Debtors have demonstrated that Charter violated the automatic stay of Section 362(a) of the Bankruptcy Code when Charter discontinued service to Windstream customers on or about March 14, 2019, as alleged in Paragraph 32 of the Complaint, and at least once after the issuance of the TRO.

**IT IS, THEREFORE, ORDERED THAT:**

1. Charter and each of its affiliates, and each of its and its affiliates' respective officers, agents, employees, and all others in active concert or participation with them shall immediately:

   a. cease and desist from any and all discontinuation of service to Windstream customers absent an order of the Court (including, without limitation, the

    recent discontinuation of service to a Windstream customer located in San Antonio, Texas) provided pursuant to the Spectrum Business Value Added Reseller Agreement, dated April 11, 2018;

b. restore service to all Windstream customers whose service was discontinued on or about March 14, 2019, as alleged in Paragraph 32 of the Complaint, to the extent not already restored;

c. cease and desist from any further action to launch the Windstream-related direct mail campaign described at page 5 of Charter's Opposition to Debtors' Motion for a Temporary Restraining Order [Adv. Docket No. 12] and, specifically, not to use in commerce, publish, or otherwise disseminate in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign) the advertisement attached as **Exhibit C** thereto;

d. cease and desist from using in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign) the advertisements attached as **Exhibit 3** to the Langston Declaration in Support of the Motion [Adv. Docket No. 3];

e. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign) that Windstream is going

4

out of business, will go out of business or will terminate service to its subscribers;

f. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign) that Windstream's bankruptcy will impair or otherwise adversely impact Windstream's ability to continue to provide service to its customers;

g. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door to door campaign): "Windstream's future is unknown, but Spectrum is here to stay."

h. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign): "Goodbye, Windstream, Hello Spectrum.";

i. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign): "Windstream Customers, Don't Risk Losing your TV and Internet Service.";

5

j. cease and desist from expressly or impliedly stating in commerce, publishing, or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign): "Windstream has filed for Chapter 11 bankruptcy, which means uncertainty. Will they be able to provide the Internet and TV services you rely on in the future? To ensure you are not left without vital Internet and TV services, switch to Spectrum.";

k. cease and desist from expressly or impliedly stating in commerce, publishing or otherwise disseminating in any and all media (including, without limitation, Internet, television, radio, newspaper and other print, billboards, direct mail, telephone and as part of any door-to-door campaign) that Windstream is in bankruptcy or Chapter 11 as part of an effort to persuade Windstream customers to switch their service to Spectrum;

l. cease and desist from taking any action or inaction, whether directly or indirectly, to interrupt, disrupt, switch or otherwise impair service to the Debtors' customers absent an order of the Court (Paragraphs 1(c)-(k) are collectively referred to as the "Prohibited Communications").

2. Charter shall (a) cause a copy of this preliminary injunction to be immediately delivered to every employee of Charter and to each person and entity to whom Charter has directed or permitted to distribute or disseminate any Prohibited Communications; and (b) notify each such employee, person and entity that the United States Bankruptcy Court for the Southern District of New York has (i) ordered them to cease and desist from making all Prohibited Communications while this preliminary injunction remains in force and effect and (ii) found that

the communications previously made by Charter that are the subject of this preliminary injunction were untrue and improper. For the avoidance of doubt, this preliminary injunction shall not be sent to Windstream customers. For the further avoidance of doubt, this preliminary injunction shall actually be provided to each of the above-described persons and they shall not merely be provided an electronic link to it unless Charter cannot provide an actual electronic or hard copy of the preliminary injunction to such person.

3. Charter shall (a) cause a copy of this preliminary injunction to be immediately delivered to all direct sales representatives associated or affiliated with Charter and/or Spectrum; and (b) direct all such direct sales representatives that the United States Bankruptcy Court for the Southern District of New York has ordered them to cease and desist from making any Prohibited Communications while this preliminary injunction remains in force and effect.

4. Charter's counsel has personally represented to the Court that the service of all Windstream customers whose service was discontinued on or about March 14, 2019, as alleged in Paragraph 32 of the Complaint, has been fully restored and that no such discontinuation of service to any Windstream customers will occur again for the duration of the Chapter 11 cases. It is acknowledged that service to a Windstream customer nevertheless was disconnected after entry of the TRO on April 16, 2019. Windstream has also alleged that Charter has failed to comply with the TRO by telling Windstream customers during a new door-to-door campaign that Windstream is going out of business and that their internet and phone service will be discontinued if they do not switch to Charter. In light of the foregoing, Windstream is authorized to submit to the Court for issuance a show cause order directed to Charter as to why Charter should not be held in contempt for violation of the TRO and/or sanctions for violation of the automatic stay of Bankruptcy Code section 362(a).

5.  Charter has represented to the Court that it has provided the Debtors with a complete list of every person or entity to whom Charter mailed the advertisements that are the subject of this preliminary injunction and that such list included both the full customer name and address, where such information is in Charter's possession.  After reviewing this list, the Debtors may report any deficiencies to Charter, and Charter shall remedy any such deficiencies within five (5) business days.  For the avoidance of doubt, "deficiencies" in the foregoing sentence shall mean the failure to include persons or entities to whom Charter mailed the advertisements that are the subject of this preliminary injunction and/or the failure to provide customer name and address information related to those advertisements and in Charter's possession.

6.  The Debtors are authorized to send a letter via postage pre-paid, first class United States mail, substantially in the form attached hereto as Appendix I (the "Proposed Letter"), to each Windstream customer who received an advertisement that is the subject of this preliminary injunction.  Charter is ordered to pay the reasonable costs incurred by Windstream in connection with preparing and mailing the Proposed Letter.

7.  To protect Charter from damages proximately caused by its compliance with the prior decretal paragraph, Charter shall be allowed, solely in the event that Charter prevails on its defense of the claims asserted by Windstream giving rise to such requirement, an administrative expense claim under 11 U.S.C. § 507(a)(2) against the Debtors in the amount of such costs incurred; provided, that nothing herein shall alter or conflict with the Court's orders authorizing debtor in possession financing and use of cash collateral in these cases.  Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are otherwise waived.

8.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this preliminary injunction are immediately effective and enforceable upon its entry. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this preliminary injunction.

9.     Good and sufficient service of this preliminary injunction shall be made if the Debtors have, on or before May 16, 2019, sent this preliminary injunction signed by the Court, by hand-delivery or e-mail to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at www.kccllc.net/windstream) and (b) any person or entity with a particularized interest in the subject matter of this preliminary injunction, such that papers are actually received by no later than May 21, 2019.

10.    Good and sufficient cause exists such that this preliminary injunction shall remain in full force and effect until the conclusion of this Adversary Proceeding.

11.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this preliminary injunction.

Dated: May 16, 2019  
       White Plains, NY

/s/Robert D. Drain  
THE HONORABLE ROBERT D. DRAIN  
UNITED STATES BANKRUPTCY JUDGE

## **Appendix I**

Proposed Letter

19-08246-rdd  Doc 61  Filed 05/16/19  Entered 05/16/19 16:00:10  Main Document

**[WINDSTREAM LETTERHEAD]**

May [ ], 2019

Customer Name
Address
City, State

Dear [name]:

Recently you may have received an envelope in the mail, which said, "Important Information Enclosed for Windstream Customers" and which contained an advertisement, which said "Windstream Customers, Don't Risk Losing Your Internet and TV Services" or "Now is the time to switch to Spectrum."

You may have thought that the envelope and advertisement were sent by Windstream. It was not sent by Windstream. The envelope and advertisement were both sent by a competitor.

After reading the advertisement, you may also have thought that Windstream is going out of business or will no longer be able to provide service to you. A federal court has now ruled that the advertisement sent to you by a competitor was untrue and improper. The federal court has also reviewed and approved this letter and directed the competitor to pay for sending it to you.

Windstream continues to operate and provide service to its customers. We regret any confusion that this competitor's untrue and improper conduct may have caused you.

Sincerely,

Name:
Title: