UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————x

In re:                                              Chapter 11

WINDSTREAM HOLDINGS, INC., et al.,                  Case No. 19-22312 (RDD)

               Debtors.                             (Jointly Administered)

——————————————————————————x

WINDSTREAM HOLDINGS, INC., et al.,

               Plaintiffs,

v.                                                  Adv. Pro. No. 19-08246

CHARTER COMMUNICATIONS, INC. and
CHARTER COMMUNICATIONS OPERATING,
LLC,

               Defendants.

——————————————————————————x

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO CONTINUE
BENCH TRIAL IN THE LIGHT OF JURY-TRIAL DEMAND**

Appearances:

Thompson Coburn LLP, by John Kingston, Michael Nepple, and Brian Hockett, for defendants
Charter Communications, Inc. and Charter Communications Operating, LLC ("Defendants")

Katten Muchin Rosenman LLP, by Terrence P. Ross, Michael R. Justus, and Shaya Rochester,
for plaintiffs Windstream Holdings, Inc., et al. ("Plaintiffs" or the "Debtors")

Hon. Robert D. Drain, United States Bankruptcy Judge

          This Court scheduled a trial on the remaining issues in this adversary proceeding to begin

March 31, 2020.  After entry of this Court's order dated March 4, 2020, which largely granted

Plaintiffs' motion for partial summary judgment on liability on all counts in accordance with the

Court's bench ruling, the remaining issues for trial on Counts I through IV, for violation of the

Lanham Act, 15 U.S.C. § 1125, and similar state deceptive trade practices laws are the amount of

damages and/or equitable relief in addition to the preliminary injunctive relief already granted,

(b) the remaining issue on Count V, for breach of contract, is the amount of damages for breach

of the parties' Value Added Reseller agreement, (c) the remaining issues on Count VI, for

violation of the automatic stay under 11 U.S.C. § 362(a), are the willful nature of such violation

and the proper sanction therefor, violation of the automatic stay having been determined, and (d)

the remaining issues on Count VII, for equitable subordination under 11 U.S.C. § 510(c) of the

claims of one of the Defendants, Charter Communications Operating, LLC ("Operating") against

certain of the Debtors are (i) the extent to which Operating's misconduct injured creditors or

conferred an unfair advantage on it (Operating's substantial violation of a generally recognized

duty outside of bankruptcy law having been determined), (ii) the tailoring of any remedy to the

actual harm, and (iii) whether equitable subordination of Operating's claims is consistent with

bankruptcy law.[1]

The Defendants timely claimed the right to a jury trial of "all issues so triable" and have

not expressly consented to this Court's conduct of such a trial.  Dkt. No. 41 at ¶ 8.  Under 28

U.S.C. § 157(e), therefore, this Court cannot try the remaining issues if the right to a jury trial

applies.[2]

The Defendants apparently recognize that the right to a jury trial does not apply to Counts

VI and VII but, assuming without arguing that such a right exists with respect to the remaining

issues, they have filed a motion "to continue" trial of Counts VI and VII until the District Court

completes its jury trial of what is left to be decided on Counts I through V (the "Motion").  It

---

[1] For the elements of equitable subordination under 11 U.S.C. § 510(c), see 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.), 169 B.R. 832, 839-41 (Bankr. S.D.N.Y. 1994); 4 Collier on Bankruptcy ¶¶ 510.05[2], [4] and [5][a] (16th ed. 2019).
[2] 28 U.S.C. § 157(e) states, "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of the parties."

2

should be noted, however, that Defendants' motion under 28 U.S.C. § 157(d) to withdraw the reference of this adversary proceeding has not yet been granted, and, accordingly, no District Court jury trial has been scheduled.  In the meantime, this Court has continued to preside over the litigation, including the Motion, as required by Federal Rule of Bankruptcy Procedure 5011(c).[3]

Rule 5011(c) goes on to state that the bankruptcy judge "may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion [to withdraw the reference]," on motion for such a stay, id., although it is well recognized "that an order granting the stay [under Rule 5011(c)] should be the exception, not the rule, and that the circumstances under which a stay should be granted are 'essentially the circumstances under which a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65.'" 1 Collier on Bankruptcy at ¶ 3.04[1][a], quoting Antioch Co. Litig. Trust v. Miller (In re Antioch Co.), 435 B.R. 493, 497 (Bankr. S.D. Ohio 2010); see also In re Tres Hermanos Dairy, LC, 2013 Bankr. LEXIS 5043, at *6-7 (Bankr. D.N.M. Nov. 27, 2013).  The Motion offers no more to meet that standard than to state that the trial of Counts VI and VII now would be "needlessly wasteful."  Motion at 8.

In any event, moreover, Defendants' counsel confirmed at oral argument that the Defendants do not seek a stay under Bankruptcy Rule 5011(c).  Transcript of February 13, 2020 hearing on the Motion ("2/13 Tr."), at 6-7.   Instead, Defendants based the Motion on the principle articulated in Ross v. Bernhard, 396 U.S. 531, 537-38 (1970), in furtherance of the Seventh Amendment of the Constitution that "where equitable and legal claims are joined in the

---

[3] "The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge. . . ."  Fed. R. Bankr. P. 5011(c).

same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims," and <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 479 (1962) ("legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims"), as well as Fed. R. Bankr. P. 7042, incorporating Fed. R. Civ. P. 42(b), which states that "[w]hen ordering a separate trial [of one or more separate issues or claims], the court must preserve any federal right to a jury trial." 2/13 Tr. at 7. <u>See</u> <u>also</u> <u>Lytle v. Household Mfg., Inc.</u>, 494 U.S. 545, 552-53 (1990); <u>Beacon Theatres v. Westover</u>, 359 U.S. 500, 508-511 (1959).[4]

Plaintiffs object to the Motion on three grounds. First, they contend that the Motion incorrectly assumes that the Defendants are entitled to a jury trial on any of the remaining issues, relying in large measure on the Second Circuit's interpretation of Supreme Court and its own bankruptcy-specific exceptions to the Seventh Amendment right to a jury trial in <u>Bankruptcy Servs. v. Ernst & Young</u> (<u>In re CBI Holding. Co.</u>), 529 F.3d 432 (2d Cir. 2008), <u>cert.</u> <u>denied</u>, 556 U.S. 1883 (2009); <u>see</u> <u>also</u> <u>Katchen v. Landy</u>, 382 U.S. 323, 339 (1966) (declining to apply <u>Beacon Theatres</u> and <u>Dairy Queen</u> in derogation of fundamental aspects of equitable, bankruptcy jurisdiction to matters that also necessarily involve claims of a legal nature). Second, for essentially the same reason they contend that even if Defendants are entitled to a jury trial on some of the remaining issues on Counts I through V, Seventh Amendment considerations do not compel postponement of the bench trial on the remaining issues on Counts VI and VII because of its alleged potential collateral estoppel effect on any of the remaining issues on Counts I through

---

[4] Defendants also rely on Bankruptcy Rule 9015's incorporation of Fed. R. Civ. P. 38(a) and 39(a). 2/13 Tr. at 7. However, "[i]t is the function of Rule 9015 to provide the procedural framework for any jury trials held [on consent] in the *bankruptcy* court." 10 <u>Collier on Bankruptcy</u> at ¶ 9015.01 (emphasis added). Fed. R. Civ. P. 38 and 39 are not incorporated by the Bankruptcy Rules for general purposes.

V.  In re CBI Holding, 529 F.3d at 468-69 (interpreting Lytle, 494 U.S. at 545, and Parklane

Hosiery Co. v. Shore, 439 U.S. 322 (1979)).  Finally, they argue in the alternative that because

the trial of the remaining issues on Counts VI and VII will have no collateral estoppel effect on

the remaining issues on Counts I through V, Defendants offer no valid constitutional (or other)

reason to defer the bench trial on Counts VI and VII until the conclusion of a jury trial on the

remaining issues on Counts I through V.

This Memorandum of Decision explains the reasons for denying the Motion based on

Plaintiffs' third argument.

**Jurisdiction**

The Court has jurisdiction over the Motion and the underlying adversary proceeding under

28 U.S.C. §§ 157(a)-(b) and 1334(b).  On Counts VI and VII the Court has "arising under"

jurisdiction pursuant to 28 U.S.C. § 1334(b).  On the remaining Counts, the Court has "arising in"

jurisdiction under 28 U.S.C. §§ 1334(b) because the causes of action are based on Defendants' (a)

postpetition inducement of the Debtors' customers to terminate service based on deceptive

communications that the Debtors were not going to be able to deliver service in the light of their

chapter 11 cases, or (b) Defendants' postpetition breach of contract for interrupting service, again

stemming from the bankruptcy cases.  "At a minimum, a bankruptcy court's 'arising in'

jurisdiction includes claims that are not based on any right expressly created by Title 11 but

nevertheless, would have no existence outside of the bankruptcy." Elliott v. GM LLC (In re

Motors Liquidation Co.), 829 F.3d 135, 153 (2d Cir. 2016) (quotation and citation omitted); see

also Ace Am. Ins. Co. v. DPH Hldgs. Corp. (In re DPH Holdings Corp.), 448 Fed. Appx. 134, 136

(2d Cir. Nov. 25, 2011), cert. denied, 567 U.S. 935 (2012); Tanguy v. West (In re Davis), 538 Fed.

Appx. 440, 443 (5th Cir. Aug. 8, 2013); In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir.

1987).  Accordingly, all Counts are statutorily "core."  28 U.S.C. § 157(b)(1); <u>In re Motors Liquidation</u>, 829 F.3d at 153.  As discussed below, however, there are limitations under both Article III of the Constitution and the Seventh Amendment on the Court's full exercise of its statutory "core" jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Stern v. Marshall</u>, 564 U.S. 462, 493-99 (2011); <u>In re CBI Holding</u>, 529 F.3d at 465-66 (determination of jury trial right made without regard to whether the claim is "core" or non-"core" under 28 U.S.C. § 157(b)); <u>Messer v. Magee</u> (<u>In re FKF 3, LLC</u>), 2016 U.S. Dist. LEXIS 117258, at *14 (S.D.N.Y. Aug. 30, 2016).

The Court's jurisdiction extends to deciding whether and when the remaining issues shall be tried by a jury.  <u>Am. Universal Ins. Co. v. Pugh</u>, 821 F.2d 1352, 1355 (9th Cir. 1987); <u>Nisselson v. Salim</u>, 2013 U.S. Dist. LEXIS 42556, at *12-13 (S.D.N.Y. Mar. 24, 2013); <u>In re McCorhill Pub., Inc.</u>, 90 B.R. 633, 637 (Bankr. S.D.N.Y. 1988).

## Discussion

### A.  Are the Defendants entitled to a jury trial on any of the counts?

Three Supreme Court decisions guide analysis of the Defendants' right to a jury trial and how that right affects the Motion's request for a continuance premised on the Seventh Amendment.  The first two, <u>Granfinanciara v. Nordberg</u>, 492 U.S. 33 (1989), and <u>Langenkamp v. Culp</u>, 498 U.S. 42 (1990), <u>reh'g</u> <u>denied</u> 498 U.S. 1043 (1991), specifically address the right to a jury trial in adversary proceedings in bankruptcy cases.  The third, <u>Stern v. Marshall</u>, 564 U.S. at 462, provides guidance on the key distinction in <u>Granfinanciara</u>, 492 U.S. at 55, 58, and <u>Langenkamp</u>, 498 U.S. at 44, between issues in bankruptcy cases that are "integral to the restructuring of the debtor-creditor relationship," and therefore tied to a public right, and other issues that are not and thus give rise to a right to a jury trial of a legal, as opposed to an equitable, claim.

6

In <u>Granfinanciara</u> the Supreme Court used a three-part analysis to determine whether a party to an adversary proceeding in a bankruptcy case had a jury trial right under the Seventh Amendment of the Constitution. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." 492 U.S. at 42. Actions that would have been brought in courts of equity at that time are not jury trial matters. <u>Id.</u> "Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first." <u>Id.</u> (citation omitted). If the remedy is equitable in nature, there is no right to a jury trial. Finally, one must determine whether the action involves a "private right" or a "public right." <u>Id.</u> at 51-55. A right to a jury trial satisfying the first two tests exists in those actions involving 'private rights' even if Congress assigned it as part of a legislative or administrative scheme to an adjudicative body that does not use a jury as factfinder. <u>Id.</u> at 49, 54-55. On the other hand, "[t]hose cases in which Congress may [consistent with the Constitution] decline to provide jury trials are ones involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity. . . . [W]e now refer to those rights as 'public' rather than 'private.' <u>Id.</u> at 55 n. 10.[5]  <u>See also</u> <u>Germain v. Connecticut Nat'l Bank</u>, 988 F.2d 1323,1328, 1331 (2d Cir. 1993).

<u>Granfinanciara</u> determined that where the defendant had not filed a proof of claim, a post-confirmation trustee's action to avoid and recover fraudulent transfers was not so tied to the "actual or constructive possession of the bankruptcy estate," 492 U.S. at 57, or otherwise so

---

[5] The Court was guided by <u>Katchen v. Landy</u>, 382 U.S. at 336-37, decided under the Bankruptcy Act, which recognized Congress' power to deprive a party's right to a jury trial by establishing courts with jurisdiction over property in the bankruptcy estate and the determination of claims against that property, even though the Bankruptcy Code abolished the Bankruptcy Act's distinction between "summary" and "plenary" jurisdiction in favor of "core" and "non-core" jurisdiction. <u>Granfinanciara</u>, 492 U.S. at 57-59.

"integral to the restructuring of debtor-creditor relations," id. at 58, to overcome under the

"public rights" exception the defendant's right to a jury trial of what the Court had previously

determined, id. at 44-48, was a claim (for the recovery of money) that is legal in nature.

Langenkamp confirmed the foregoing logic in the obverse context: where the defendant

in a trustee's action for the recovery of money as an avoidable preference *had* filed a proof of

claim, the preference action became "integral to the restructuring of the debtor-creditor

relationship through the bankruptcy court's equity jurisdiction," and, therefore, the defendant

was not entitled to a jury trial. 498 U.S. at 44-45.

Neither Granfinanciara nor Langenkamp provided much guidance beyond their specific

facts regarding the contours of the "public rights" exception in the bankruptcy context. This led

to confusion in some cases over whether Langenkamp was premised on a waiver theory (that is,

standing for the proposition that by filing a proof of claim a party subjects itself to the

bankruptcy court's equitable jurisdiction for all matters over which the court has jurisdiction) or,

instead, requires a more nuanced analysis of what truly is central to the bankruptcy court's

supervision of the restructuring of the debtor-creditor relationship. See, e.g., Germain, 988 F.2d

at 1329-33 (rejecting former, waiver approach in favor of latter).

Stern v. Marshall, 564 U.S. at 462, somewhat clarified the public/private rights issue,

albeit not in the Seventh Amendment context, but, rather, in deciding the constitutional

limitations on the bankruptcy court's power, as an Article I court, to issue a final judgment on a

claim asserted on behalf of a bankruptcy estate.[6] In addressing whether a bankruptcy estate's

counterclaim against a creditor who had filed a proof of claim could be decided by a final order

by the bankruptcy court, the Court held, among other things, that merely filing a proof of claim

---

[6] The two contexts are related, however, as noted in both Granfinanciara, 492 U.S. at 53-54, and Stern v. Marshall, 564 U.S. at 487, 499

does not subject a creditor to the bankruptcy court's power to enter a final order on *all* matters in which the bankruptcy court has jurisdiction, even where Congress denominated the matter as "core" in 28 U.S.C. § 157(b).  Id. at 496-97 (refuting the argument that Langenkamp is based on a waiver theory).  More importantly, the Court held that "Congress may not bypass Article III [of the Constitution] simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claim allowance process."  Id. at 499 (emphasis in original).  Because the state law counterclaim at issue, unlike the preference claim in Langenkamp, would not necessarily be decided as part of deciding the proof of claim,[7] the Court ruled that the bankruptcy court, as an Article I court, could not issue a final judgment on it.  Id.  On the other hand, the decision continued to recognize the "public right" nature of truly core bankruptcy matters, stating that its holding did not "meaningfully change[] the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one."  Id. at 502.

Stern v. Marshall thus bears out the analytical framework of Germain that the "public right" exception to the Seventh Amendment in bankruptcy matters hinges not simply on whether a defendant files a proof of claim but on whether the cause of action at issue is "integrally related to any substantive bankruptcy provisions."  988 F.2d at 1332.

Applying that framework to the remaining issues to be tried in this adversary proceeding leads to the conclusion that the Defendants are not entitled to a jury trial on the remaining issues

---

[7] In determining that "[t]here was never reason to believe that the process of ruling on [the creditor's] proof of claim would necessarily result in the resolution of [the bankruptcy estate's] counterclaim," the Court listed several elements of the counterclaim litigation that were separate and independent of the proof of claim dispute, and that the only overlap between the two claims was merely one of several issues that the estate would have to establish.  Id. at 498.

9

in Counts VI and VII, but are entitled, contrary to the Plaintiffs' objection, to a jury trial on the remaining issues in the other counts.

**Equitable Subordination**.  By its terms, a cause of action for equitable subordination under 11 U.S.C. § 510(c) seeks a remedy that is equitable in nature.  In addition, that remedy is a unique creature of bankruptcy law, its outcome will determine the priority and treatment of Operating's claims in these cases, and it is collective in nature in the sense that it pertains to the relationship between the defendant's claims on the one hand and the creditors holding claims in the same class as part of the restructuring of the debtor/creditor relationship.  Not surprisingly therefore, such a cause of action does not give rise to a right to a jury trial, including on the remaining issues in Count VII.  Vieira v. Simpson, 2016 U.S. Dist. LEXIS 129205, at *13-14 (D. S.C. Sept. 21, 2016); Butler v. Anderson (In re C.R. Stone Concrete Contrs. Inc.), 2013 Bankr. LEXIS 5692, at *51-52 (Bankr. D. Mass. Oct. 15, 2013) ("It is immediately apparent that no right to a jury trial exists with respect to equitable subordination under 11 U.S.C. § 510.").

**Breach of the Automatic Stay.**  Although the question is not quite as easily answered, it is well established that an action to enforce the automatic stay under 11 U.S.C. § 362(a) also does not give rise to a jury trial right.  The stay furthers the Bankruptcy Code's fresh start policy for debtors; it also centralizes disputes concerning the estate at least initially in the bankruptcy forum and thus ensures that the estate is not divided inefficiently or outside of the Code's priority scheme and thus protects not only debtors but also the collective creditor body. SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000); see also Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374, 382-83 (6th Cir. 2001).  Any breach of the stay whose effects are not promptly corrected by

enforcement and the imposition of sanctions to restore the status quo thus deprives debtors and their creditors of a fundamental bankruptcy protection.[8]

Actions to enforce the automatic stay, or, rather, its analogue -- an action to enforce an injunction or other court order -- did not require a jury trial in the courts of 18th century England, instead being determined by the judge whose order allegedly was breached.  Even when joined with a request for the payment of sanctions in the form of money damages (usually a legal remedy) and mild punitive sanctions, such an action seeks merely to restore the status quo, an equitable remedy, while ensuring respect for the court's orders.  In re Chateaugay Corp., 920 F.2d 18, 187 (2d Cir. 1990).  Finally, such an action seeks to enforce a "public right" in the light of the automatic stay's fundamental role in the bankruptcy system.  Courts therefore regularly treat such actions as properly tried by the court, not a jury.  See Calderon v. Bank of Am. Corp. (In re Calderon), 497 B.R. 558, 561-66 (Bankr. E.D. Ark. 2013), and the cases cited therein; see also In re C.R. Stone Concrete Contrs., 2013 Bankr. LEXIS 5692, at *57-59; Holman v. CitiMortgage, Inc. (In re Holman), 2010 Bankr. LEXIS 2773, at *15-17 (Bankr. D. Ala. Sept. 1, 2010).[9]  Cf. Germain, 988 F.2d at 1328 (suggesting that claim for violation of the automatic stay would not give rise to jury trial right).

Accordingly, the Defendants are not entitled to a jury trial on the remaining aspects of Count VI.[10]

---

[8] Consider a chapter 13 debtor deprived of her car in violation of the automatic stay.  Without prompt redress, she runs the serious risk of breaking her budget on alternative transportation or losing her job to which she commutes, to her creditors' and her detriment.

[9] A claim for attorneys' fees incurred in enforcing the automatic stay is restitutionary in nature and does not give rise to a jury trial right.  In re Holman, 2010 Bankr. LEXIS 2773, at *17, citing 8 Moore's Federal Practice § 38.31[5][b][iv] (3d ed. 2019).

[10] This result is perhaps not entirely to the Plaintiffs' liking; one can well imagine that they would prefer a jury to decide the amount necessary to correct the effects of Operating's unauthorized interruption of Plaintiffs' customers' TV service during the college basketball playoffs.

**The Remaining Counts.** The Plaintiffs give three reasons why Defendants are not entitled to a jury trial on the remaining issues with respect to Counts I through IV (violation of the Lanham Act and analogous state law deceptive trade practices statutes) and two reasons why they are not entitled to a jury trial on the remaining issue with respect to Count V (breach of the Value Added Reseller Agreement).

The first, that the Defendants have waived their right to a jury trial by Operating's filing proofs of claim in certain of the Debtors' cases, is easily disposed of. The waiver theory would apply, if at all, only to Operating and then only as to the claims asserted by the Plaintiffs in whose cases Operating has filed a proof of claim. More importantly, however, as discussed above, controlling precedent rejects the waiver theory. Germain, 988 F.2d at 1330:

> It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.

See also Stern v. Marshall, 564 U.S. at 497-98; In re CBI Holding, 529 F.3d at 466; In re FKF 3, LLC, 2016 U.S. Dist. LEXIS 117256, at *24-24; Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff), 597 B.R. 466, 476, 485 (Bankr. S.D.N.Y. 2019) ("Not every claim filing triggers a bankruptcy court's equitable jurisdiction and defeats the defendant-creditor's right to a jury trial. . . . Rather, a creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship.") (quotations and citations omitted).

Secondly, Plaintiffs contend that certain aspects of the remaining issues with respect to Counts I through IV are equitable in nature and thus do not give rise to a jury trial right.  This may well be the case for certain aspects of the Lanham Act claims.  See, e.g., Emmpresa v. Culbro Corp., 123 F. Supp. 2d 203, 206, 209, 211 (S.D.N.Y. 2000) (no jury trial for claim for disgorgement of defendant's profits or for an accounting for lost profits for unjust enrichment, at least where the parties' contractual relationship is not the basis for the claim or they are not in direct competition, or for attorneys' fees and costs where the other available remedies are equitable).  Accord, Juicy Couture, Inc. v. L'Oreal USA, Inc., 2006 U.S. Dist. LEXIS 9154, at *2-3 (S.D.N.Y. Mar. 7, 2006).  The analogous state law Uniform Deceptive Trade Practices Act claims also appear to be triable by a judge.  Bearoff v. Craton, 350 Ga. App. 826, 830 S.E.2d 362, 374 (2019); Lloyd v. Specialty Care of Marietta, 2009 U.S. Dist. LEXIS 134893, at *14 (N.D. Ga. Sept. 9, 2009); Wines v. First Nat'l of Neb., Inc., 2014 U.S. Dist. LEXIS 198708, at *10 (D. Neb. Aug. 20, 2014).

However, and crucially for purposes of the Motion, Plaintiffs do not dispute that the damages (as opposed to the treble damages) portion of their Lanham Act claim is legal in nature, ordinarily giving rise to a jury trial right.  2/13 Tr. at 61.  See generally Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1353-1358 (11th Cir. 2019).  Moreover, the Defendants would have the right to a jury trial on the remaining, damages issue on Count V, for breach of contract, a quintessentially legal claim.  2/13 Tr. at 61.  Silverman v. Tudor Ins. Co. (In re Lenders Abstract & Settlement Serv.), 493 B.R. 385, 396 (E.D.N.Y. 2013); Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP), 2011 U.S. Dist. 135990, at *16 (S.D.N.Y. Nov. 23, 2011); N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In

13

re N. Am. Energy Conservation, Inc.), 2000 U.S. Dist. LEXIS 15084, at *7 (S.D.N.Y. Oct. 10, 2000)

Therefore, to overcome the application of Beacon Theatres, Dairy Queen and their progeny, Plaintiffs must rely on their last argument, which is that the "public rights" exception as applied in bankruptcy cases removes Counts I through V from the ambit of such Seventh Amendment cases. The Plaintiffs are partway correct. The Supreme Court and the Second Circuit have specifically recognized, in cases that the Motion inexplicably failed to cite, that the bankruptcy court *can* first decide a matter that otherwise would require a jury trial if integral to the court's overseeing the restructuring of the debtor/creditor relationship. Thus in Katchen v. Landy, 382 U.S. at 338-39, the Court rejected the argument that Dairy Queen and Beacon Theatres required a jury trial of a preference cause of action before the trustee's claim objection in which defendant's preference liability was an integral part: "Such a result is not consistent with the equitable purposes of the Bankruptcy Act nor with the rule of Beacon Theatres and Dairy Queen, which is itself an equitable doctrine." Id., at 339.[11]

The Second Circuit dealt with the issue directly in In re CBI Holding, 529 F.3d at 432. That opinion held, first, that because claims of a debtor's estate's representative against a claimant for negligence, breach of contract, and fraud were "so factually and legally interconnected with [the claim against the estate], as well as with [the] primary defenses to that claim," they could be tried by the bankruptcy judge without violating Article III of the Constitution and N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). Id. at

---

[11] Katchen confirmed that Beacon Theatres and Dairy Queen themselves "recognized that there might be situations in which the Court would proceed to resolve the equitable claim first even though the results might be dispositive of the issues in the legal claim." Id.; see also Parklane Hosiery Co. v. Shore, 439 U.S. at 335-37; Wechsler v. Hunt Health Sys., 285 F. Supp. 2d 343, 348-49 (S.D.N.Y. 2003) (noting that while Beacon Theatres stated a general rule that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through the prior determination of equitable claims," 359 U.S. at 510-11, Katchen and Parklane Hosiery recognize countervailing circumstances where such a rule should not be applied).

459-60, 462.  Second, it held that the bench trial of the foregoing claims *and* related third-party

claims, notwithstanding their ordinarily legal nature, id. at 466, did not violate the Seventh

Amendment or Lytle, 494 U.S. at 545, which, consistent with Beacon Theatres and Dairy Queen,

required a jury trial and vacated a bench decision whose collateral estoppel effect would have

precluded such a trial.  Id. at 551-54.  Consistent with Katchen, Granfinanciara, Langenkamp,

and Germain, the Second Circuit held, instead, that no jury trial was required, and the bench trial

*could* serve as collateral estoppel, because "the Lytle rule does not apply in the context of

bankruptcy proceedings," id. at 468, where all the claims at issue are sufficiently related to the

equitable reordering of debtor-creditor and creditor-creditor relations. Id. at 467-68, quoting

Germain, 988 F.2d at 1329.  See also Montagne v. Ag Venture Fin. Servs. (In re Montagne),

2009 Bankr. LEXIS 3726, at 11-17 (Bankr. D. Vt. Nov. 13, 2009).[12]

        After Stern v. Marshall, it is questionable whether the third party claims at issue in In re

CBI Holding would be found to be so integrally related to the bankruptcy court's fundamental

tasks that they would be dealt with in the same manner.  1 Collier on Bankruptcy at ¶

3.08[2][a][i].  However, Stern recognized the ongoing validity of Katchen, 564 U.S. at 496; and

Katchen's general principle, that bench trials by the bankruptcy court of issues that are integral to

the restructuring of the debtor-creditor relationship can and should proceed notwithstanding that

certain issues might ordinarily be triable by a jury or the court's determination might serve as

collateral estoppel, continues post-Stern.  See, e.g., Marshall v. Picard (In re Bernard L. Madoff

Inv. Secs. LLC), 740 F.3d 81, 95 (2d Cir. 2014); U.S. Bank v. Verizon Communs., Inc., 761 F.3d

409, 423-25 (5th Cir. 2014), cert. denied, 135 S. Ct. 1430 (2015).  That this set of "integral"

---

[12] Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Hldgs. Corp.), 336 B.R. 39 (Bankr. S.D.N.Y. 2006),
relied on by Defendants, predates In re CBI Holding. Moreover, the trustee's fraudulent transfer, preference, and
breach of contract claims in that case were not essential to the restructuring of the debtor/creditor relationship; the
defendant had not filed a proof of claim in the case. Id. at 61.

bankruptcy issues goes beyond the liquidation of proofs of claim is, as discussed above, clear

from <u>Stern</u> and <u>Germain</u>.  <u>See also</u> <u>In re Millenium Lab Holdings II, LLC</u>, 945 F.3d 126, 138-39

(3d Cir. 2019).

      The problem for the Plaintiffs, however, is that unlike the trustee's claims in <u>Katchen</u> and

<u>Langekamp</u>, the complete resolution of which were integrally tied to resolving the defendants'

proofs of claim, Counts I through V do not have to be decided in their entirety to resolve Counts

VI and VII.  Instead, the issues that did overlap with the determination of Counts VI and VII

already have been decided by this Court's partial summary judgment ruling on liability.[13]  The

remaining issues for trial are not integrally tied to the restructuring of debtor-creditor or creditor-

creditor relations.  Indeed, it would appear that a ruling on the remaining issues on Counts VI

and VII would not serve as collateral estoppel for the remaining issues on Counts I through V, as

apparently confirmed at oral argument when counsel acknowledged that Plaintiffs' witness on

damages for purposes of Counts I through V is not slated to testify on Counts VI and VII.  2/13

Tr. at 80, 82.  Alternatively, there is only some overlap between Counts I through V and Counts

VI and VII, not enough for their determination to be necessary to the determination of Counts VI

and VII (although determination of Counts VI and VII could have led to collateral estoppel with

respect to certain aspects of Counts I through V now decided on partial summary judgment).

<u>See, e.g.</u>, <u>In re FKF 3, LLC</u>), 2016 U.S. Dist. LEXIS, at *31-33; <u>Lehman Bros. Holdings, Inc. v.</u>

<u>JP Morgan Chase Bank, N.A.</u> (<u>In re Lehman Bros. Holdings, Inc.</u>), 480 B.R. 179, 191 (S.D.N.Y.

2012) ("[E]even assuming that there is some overlap between [the] plaintiffs' liability theories

and [the creditor's] right to recover from the estate, plaintiffs damages claim will not 'be

---

[13]It is worth noting that a grant of summary judgment does not itself violate the Seventh Amendment right to a jury trial.  The right exists only with respect to disputed issues of fact.  <u>Harris v. Interstate Brands Corp.</u>, 348 F.3d 761, 762 (8th Cir. 2003), citing <u>Fidelity & Deposit Co. v. United States</u>, 187 U.S. 315, 319-20 (1902); <u>Kennedy v. N.Y. Presbyterian Hosp.</u>, 2011 U.S. Dist. LEXIS 73622, at *11 (S.D.N.Y. July 6, 2011).

*completely* resolved in the bankruptcy process of allowing or disallowing [the creditor's]

claims.") (emphasis in original), quoting <u>Stern v. Marshall</u>, 564 U.S. at 487.

 Under those circumstances, trial of the remaining issues on Counts I through V should

proceed under <u>Dairy Queen</u> and <u>Beacon Theatres</u> by jury.  In other words, the sequencing of the

trial of the jury and non-jury issues in Counts I through V should be governed by those

precedents because at this time there is no countervailing bankruptcy-related policy requiring a

different sequence.  This is not a repudiation of the "time of filing" rule, under which a

bankruptcy court retains its constitutional authority based on the time of filing of the litigation,

for example even if the defendant later withdraws its proof of claim.  <u>See</u>, <u>e.g.</u>, <u>In re Bernard L.</u>

<u>Madoff Inv. Secs. LLC</u>, 2020 U.S. Dist. LEXIS 32882, at *24-28 (S.D.N.Y. Feb. 26, 2020), and

cases cited therein.  It is based simply on the fact that, after the Court's grant of partial summary

judgment, <u>Katchen</u> and <u>In re CBI Holding</u> no longer require the damages issues on Counts I

through V to be dragged along with the remaining issues on Counts VI and VII, if they ever did.

### B.  Must the bench trial on Counts VI and VII be stayed?

 Generally, federal courts have a "virtually unflagging obligation . . . to exercise the

jurisdiction given to them."  <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S.

800, 817 (1976).  Of course, there are numerous discretionary exceptions to the rule, including

abstention under 28 U.S.C. § 1334(c)(1) and the possibility of a stay contemplated by Fed. R.

Bankr. P. 5011(c).  As noted, however, Defendants did not seek a stay of the bench trial on

Counts VI and VII under Fed. R. Bankr. P. 5011(c) but only based on Seventh Amendment

principles.  And, as discussed above, those principles do not require deferral of the bench trial on

Counts VI and VII in the light of Defendants' right to a jury trial on the remaining issues on

Counts I through V.  The issues to be tried on Counts VI and VII at this time are fundamentally

different that those to be tried on Counts I through V; it appears clear that they would have no collateral estoppel effect on the remaining issues on Counts I through V.  See Wechsler v. Hunt Health Sys., 285 F. Supp. 2d at 347-48 (Beacon Theatres and Dairy Queen inapplicable where the common issues between jury and non-jury claims have been resolved by partial summary judgment). The Defendants therefore have not carried their burden with respect to the Motion, and because only one side seeks to defer the Court's bench trial of the remaining issues on Counts VI and VII, that trial shall proceed, unless, of course, the District Court determines to withdraw the reference of the entire adversary proceeding.  In re FKF 3, LLC, 2016 Dist. LEXIS 117258, at *75.[14]

## Conclusion

Counsel for the Plaintiffs shall submit an order consistent with this Memorandum of Decision.

Dated:  White Plains, New York
         March 17, 2020

/s/ Robert D. Drain
United States Bankruptcy Judge

---

[14] Defendants possibly argued in their reply to Plaintiffs' objection to the Motion that Plaintiffs' decision to proceed now with a trial on the equitable subordination count would estop them from pursuing their damages claims on the Lanham Act and breach of contract claims, relying on a passage in Germain in which the court assumed that the trustee had waived his right subsequently to seek equitable subordination after the jury trial.  988 F.2d at 1332.  The facts here are materially different and, with the exception of not permitting a double recovery, no waiver or estoppel would flow from the Debtors pursuing their equitable subordination count now against Operating.  See Picard v. Katz, 825 F. Supp. 2d 484, 487 (S.D.N.Y. 2011),